NOS. 07-08-0233-CR, 07-08-0234-CR, 07-08-0235-CR,
07-08-0236-CR, 07-08-0237-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

NOVEMBER 24, 2009
_____

JOSEPH WENDELL HUME, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 181ST DISTRICT COURT OF RANDALL COUNTY;

NO. 19,597-B, 19,600-B, 19,601-B, 19,611-B, 19,619-B;

HONORABLE JOHN BOARD, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Joseph Wendell Hume, appeals his consecutive life sentences for eight offenses. We affirm.

Background

On January 6, 2008, Lenora Braddock was shopping at Kohl's in Amarillo, Texas, with her two daughters. As the three women returned and entered their vehicle, appellant

entered into the back seat of the vehicle. Appellant pulled a gun and robbed the three women. Later on that same day, appellant approached another woman in a Walmart parking lot and displayed a gun. Appellant had the woman drive him out of the parking lot to a secluded area where he proceeded to rob and rape her. During the second assault, appellant asked the victim to put on lipstick, place a cigarette in her mouth to wet it, and to then give him the cigarette. Because of appellant's unusual request for a wet cigarette with lipstick, the police took a second look at a 2006 case in which two women were robbed at the Westgate mall parking lot. In that Westgate mall case, the robber also asked the women to provide him a wet cigarette with lipstick. Appellant was charged with six indictments, two of which contained multiple counts.

On May 22, 2008, appellant pled guilty to two counts of aggravated sexual assault resulting from the Walmart incident and requested that the judge assess punishment. After hearing punishment evidence from the victims in all three incidents, the trial judge sentenced appellant to life imprisonment in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ), each sentence to be served concurrently. After a break in the proceedings, appellant then pled guilty to four additional indictments with the State dismissing one indictment. Those four indictments included five charges of aggravated robbery and one additional charge of aggravated sexual assault. In separate proceedings, the trial court proceeded to sentence appellant in each of those four

2

indictments to life imprisonment in ID-TDCJ, the sentence for each indictment to be served consecutively.[1]

On May 29, appellant filed notice of appeal and, on June 20, filed a motion for new trial. In his motion for new trial, appellant contends that his trial counsel did not heed his request for psychiatric help. At a hearing held on July 31 in regard to his motion for new trial, appellant raised the issues of competency to stand trial as well as voluntariness of the plea due to his lack of understanding of his eligibility for probation from a jury. At the conclusion of the hearing on the motion for new trial, the trial court denied appellant's motion for a new trial. Appellant now appeals.

On appeal, appellant contends that (1) the trial court erred in denying his motion for new trial because the plea was involuntarily entered by appellant who did not understand probation eligibility nor the possibility of concurrent sentences from a jury; (2) the plea was involuntarily entered by appellant who did not understand probation eligibility nor the possibility of concurrent sentences from a jury; and (3) ineffective assistance of counsel. We affirm.

Denial of motion for new trial

To preserve an issue for appellate review, an appellant must make a timely and specific objection at trial, and obtain a ruling from the trial court. See TEX.R.APP.P. 33.1.

---

[1] The indictment being appealed in Cause No. 07-08-00236-CR has three separate counts. The court sentenced appellant to a life sentence in each count. Those sentences contained within the same judgment are to be served concurrent to one another, but consecutively to the sentences pronounced in the other indictments.

When a defendant has no opportunity to object to a trial court's action until after it takes place, a defendant may still preserve error by raising the objection in a timely filed motion for new trial. See Issa v. State, 826 S.W.2d 159, 160-61 (Tex. Crim. App. 1992). The granting or denying of a motion for new trial is within the discretion of the trial court. See State v. Gonzalez, 855 S.W.2d 692, 696 (Tex.Crim.App.1993). A trial court abuses its discretion when its action or decision is not within the zone of reasonable disagreement. See Montgomery v. State, 810 S.W.2d 372, 391(Tex.Crim.App.1991) (op. on reh'g). A trial judge's ruling is presumed to be correct. See Lee v. State, 167 Tex.Crim. 608, 322 S.W.2d 260, 262 (1958). Implicit within the standard of review lies an element of deference to the determinations of the trial court. See Santacruz v. State, 963 S.W.2d 194, 196 (Tex.App.–Amarillo 1998, pet. ref'd). When material issues of fact are raised by conflicting evidence at a hearing on a motion for new trial, the trial court does not abuse its discretion in overruling the motion. See Keady v. State, 687 S.W.2d 757, 759 (Tex.Crim.App. 1985).

Initially, we note that appellant did not raise the issue of concurrent/consecutive sentencing either during sentencing nor at the hearing on the motion for new trial. Therefore, appellant has waived this issue. TEX. R. APP. P. 33.1. On the issue of whether trial counsel adequately explained the possibility of probation from a jury, we find that the testimony of trial counsel during the hearing on the motion for new trial is sufficient to support the trial court's ruling. Appellant contends that trial counsel never raised the possibility of probation from the jury. However, upon recall, trial counsel explained that, because the State intended to proceed forward to trial on each indictment, her opinion was that a jury was not likely to recommend probation in five separate trials. Even if trial

4

counsel's testimony raised, at best, a conflict in evidence as to whether trial counsel conveyed the information to appellant that probation was an option with a jury, the trial court did not abuse its discretion in overruling the motion.  See Keady, 687 S.W.2d at 759.  We defer to the determinations of the trial court.  See Santacruz, 963 S.W.2d at 196.  We overrule appellant's first issue.

Voluntariness of plea

When considering the voluntariness of a guilty plea, we must examine the entire record.  See Martinez v. State, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998) (per curiam).  A finding that a defendant was duly admonished creates a *prima facie* showing that a guilty plea was entered knowingly and voluntarily. Id. at 197.  A defendant may still raise the claim that his plea was not voluntary; however, the burden shifts to the defendant to demonstrate that he did not fully understand the consequences of his plea such that he suffered harm.  Id.

On appeal, appellant contends that his pleas were involuntary because he did not believe he was eligible for probation from a jury and further believed that sentencing from a jury meant automatic consecutive sentencing.  However, the clerk's record in each of these cases contains a felony plea memorandum containing appellant's signature documenting that appellant was indeed admonished accordingly.  See TEX. CODE CRIM. PROC. ANN. art. 26.13 (Vernon Supp. 2009).[2]  Since the felony plea memorandum creates

---

[2] Further references to the Texas Code of Criminal Procedure will be by "art. __" or article ___.

a *prima facie* showing of voluntariness, see <u>Martinez</u>, 981 S.W.2d at 197, the burden is upon appellant to demonstrate he did not fully understand the consequences of his plea. Again, the issue of consecutive sentences was not raised during the hearing on the motion for new trial nor at the original plea. Hence, the record before us contains no evidence of appellant's alleged misunderstanding regarding consecutive sentencing. We conclude that appellant has not met his burden and that the record does not support appellant's contention that his attorney led him to believe that jury sentencing meant automatic consecutive sentencing.

Next, appellant contends that he believed that a jury could not give him probation and that his only option for receiving probation was to go to the trial judge for punishment. From the testimony during the hearing on the motion for new trial, trial counsel initially stated that "I had also already provided him with copies of the statutes that showed he wasn't eligible for probation." However, when asked to clarify her statement, trial counsel stated

> If we went to successive trials – once he had one trial doesn't mean he's going to get probation on the other trials, or that you would be able to give him probation. Probation is always a possibility. I repeatedly told him that I did not feel like a jury trial in Randall County would give him probation on any case that was tried. I had prepared applications [for probation] to provide him. . . . it was just that once we tried one, even if he had gotten probation on one of them, it doesn't mean if we went to trial on the next one – and my understanding from the district attorney's office was that they would do a jury trial on each one of the offenses. So it's not that he wouldn't have necessarily been eligible, but that I didn't feel that a jury would give him probation, that if we did one it doesn't mean he would get it on all the others.

When directly asked if appellant knew that there was that slight chance that he could get probation from a jury, trial counsel answered, "I am – I – yes." Further on cross

6

examination, trial counsel was asked, "Did you tell him he was not eligible for probation from a jury," trial counsel answered, "No." During that same hearing, appellant testified and stated, "I asked her [trial counsel] what would be the best solution if possible, and she said the judge would probably be the best solution, because the jury would stack the charges and all – probably would not give you probation." However, when asked later, "Did you ever, at any time, think that a jury could give you probation in these cases," appellant answered, "No."

In addition to the testimony offered at the hearing on the motion for new trial, we also have a transcript from a meeting between appellant, trial counsel and the district attorney. In an unusual step, and against trial counsel's advice, appellant demanded and received a meeting with the district attorney and an assistant district attorney. At the meeting, the State reiterated its offer to appellant that, in exchange for a plea of guilty, that the State would recommend life sentences but would ask that the sentences not be stacked. At that meeting, several terms related to probation were used including stacked, concurrent, and deferred adjudication. Finally, we have the clerk's record of the plea hearing where it appears that appellant received properly administered admonishments.

From an examination of the entire record, it would appear that the only evidence supporting appellant's contention is his self-serving statement at the hearing on the motion for a new trial. Appellant was aware of, at minimum, the possibility of probation. Considering that appellant was insistent that he be given probation, trial counsel would have investigated the different possibilities of gaining probation for her client. In support of that proposition, we have trial counsel's statement that she had never told him that he

couldn't get probation from a jury, but only that there was a slight chance. We also have appellant's statement that trial counsel told him that a jury "probably would not give you probation." We also have a transcript of a meeting requested by appellant where probation is the main topic of discussion. Throughout the meeting, appellant and the attorneys discuss several options such as jury trials, plea bargains, and an open plea before the judge. Eventually, appellant decides on an open plea because of the understanding that the judge could give him deferred adjudication. At that plea, appellant signed a felony plea memorandum containing the admonishment according to art. 26.13 as well as received the same admonishments from the trial judge verbally. Considering the *prima facie* showing that a guilty plea was entered knowingly and voluntarily, we conclude that appellant has not met his burden to demonstrate that his plea was involuntarily entered because he believed that a jury could not give him probation. We overrule appellant's second issue.

Ineffective assistance of counsel

The right to counsel affords an accused an attorney reasonably likely to render and rendering reasonably effective assistance. See Stafford v. State, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). In analyzing claims of ineffective assistance of counsel, we apply the two-part test announced in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Ex parte Ellis, 233 S.W.3d 324, 330 (Tex. Crim. App. 2007). Under this framework, appellant must prove by a preponderance of the evidence that: (1) his counsel's performance was deficient; and (2) there is a reasonable probability–one sufficient to undermine confidence in the result–that the outcome would have been different but for his counsel's deficient performance. Id.

8

To establish deficient performance, appellant must show that counsel was not acting as a reasonably competent attorney, and his advice was not within the range of competence demanded of attorneys in criminal cases. Id. Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Id. Therefore, appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id. The reasonableness of an attorney's performance is judged according to the prevailing professional norms and includes an examination of all the facts and circumstances involved in a case. Id. We must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. Id.

Under the second prong of the Strickland analysis, appellant must establish that the constitutionally deficient performance prejudiced his defense--that is, he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 330-31. When making this determination, any constitutionally deficient acts or omissions will be considered in light of the totality of the evidence before the judge or jury. Id. at 331.

Under the first prong, it appears that trial counsel has performed according to the professional norms. Since appellant was facing 3g offenses, see art. 42.12 § 3g, appellant was not eligible for judge ordered community supervision after conviction or a plea of guilty. Thus, appellant's only options were to receive probation from a jury at the conclusion of five jury trials, or to receive deferred adjudications from the trial judge. See art. 42.12 § 4,

9

5.  Although testimony at the hearing on the motion for new trial was confusing at times, it is apparent that appellant's trial counsel was discounting the possibility of appellant receiving probation from a jury multiple times, not that probation was not available from a jury. Additionally, appellant and his counsel had met with the district attorney and an assistant district attorney to discuss a probation offer prior to the date appellant pled guilty. At that time, appellant's trial counsel explained that, if appellant went to the trial judge for sentencing, the judge was bound within the punishment range for the offenses as set out by the legislature. However, within that range, trial counsel explained that the judge would have the ability and discretion to sentence appellant to anything within that range. Also, at that time, the issue of concurrent sentences came up only briefly. The mention of concurrent sentences was when the district attorney reiterated the offer previously given to appellant, that being six life sentences to run concurrently. Given the fact that appellant was facing six indictments and that the State has declared its intention to prosecute each before a jury unless appellant pled guilty, appellant has not overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Ex parte Ellis, 233 S.W.3d at 330. Because appellant has failed to establish deficient performance by counsel, we will forego any analysis under the second prong of Strickland. TEX. R. APP. P. 47.1. We overrule appellant's last issue.

Conclusion

For the foregoing reasons, we affirm.

Mackey K. Hancock
Justice

Do not publish.